UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT P. LESHOWITZ,<br><br>             Plaintiff,<br><br>     v.<br><br>MICHAEL BISSON,<br><br>             Defendant. | Case No. 2:16-cv-01557-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

*Pro se* plaintiff Scott P. Leshowitz, who is currently confined at the Stafford Creek Corrections Center ("SCCC"), filed a 28 U.S.C. § 1983 prisoner civil rights complaint for conduct that occurred while he was a detainee at the Monroe Correctional Complex ("MCC"). Dkt. 1-1. The Court declined to serve the complaint because it was deficient, but granted leave for the filing of an amended complaint. Dkt. 6; *see also* Dkt. 16. Mr. Leshowitz filed an amended complaint on February 1, 2017. Dkt. 21. On February 22, 2017, the undersigned recommended the amended complaint be served only on Defendant Michael Bisson with respect to plaintiff's claim of excessive force and that all other claims (against Mr. Bisson, Sue Collins, Mark Bergquist, Sergeant Wilmoth, and all other unnamed individuals) be dismissed without prejudice for failure to state a claim. Dkt. 22. That recommendation was adopted, the Court directed service of the amended complaint on Defendant Bisson, and this action proceeded

REPORT AND RECOMMENDATION - 1

against Defendant Bisson alone.  Dkt. 23.

Presently before the Court is Defendant Bisson's motion for summary judgment, which seeks dismissal pursuant to Fed. R. Civ. P. 56 for failure to exhaust administrative remedies. Dkt. 29.  Mr. Leshowitz requested and was granted a six week extension of time to file his response to the motion.  Dkt. 34.  On January 9, 2018, plaintiff filed three letters with the Court (Dkt. 35, 36, and 37), but filed no response to the motion.  The only statement which can be considered responsive to defendant's pending motion is found in Dkt. 35 at page 2, where plaintiff states that he didn't know he could or should file a grievance and besides, what happened is all on video.  *Id.*

The undersigned recommends Defendant Bisson's motion for summary judgment be granted and this matter be dismissed without prejudice for failure to exhaust.

## FACTS

**A.    Amended Complaint**

Plaintiff alleges that Defendant Bisson used excessive force when Officer Bisson "slam[med] [Plaintiff's] head into a concrete wall" after Plaintiff called him stupid and told him to "shut up stupid."  Dkt. 21.  Plaintiff also alleges that Officer Bisson placed his wrist restraints on too tightly.  *Id*.

**B.    Washington Offender Grievance Program ("OGP")**

According to Dale N. Caldwell, the Grievance Program Manager of the Department of Corrections ("DOC"), there is a grievance procedure available to inmates who are incarcerated in DOC institutions to assist in administrative conflict resolution.  Dkt. 30, Declaration of Dale N. Caldwell, Attachment A, DOC Policy 550.100 effective date March 18, 2013; Attachment B, Offender Grievance Program Manual effective date July 1, 2015.  Under the OGP, inmates may

file grievances on a wide range of issues relating to their incarceration.  For example, inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions.  Dkt. 30, Caldwell Dec. at ¶5.  A wide range of remedies are available to inmates who utilize the OGP.  These remedies include: 1) possible restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by DOC officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or DOC policy or practice.  *Id*. at ¶7.

The grievance procedure consists of four levels of review.  Dkt. 30, Caldwell Dec. at ¶8. Level 0 is the complaint or informal level, at which the grievance coordinator pursues informal resolution. Level I grievances are grievances against policy, procedure, or other offenders.  The local grievance coordinator is the respondent at Level I.  *Id*.  Offenders may appeal a Level I response to Level II.  *Id*.  Staff conduct grievances are also initiated at Level II.  *Id*.  All appeals and initial grievances received at Level II are investigated, with the prison superintendent being the respondent.  *Id*.  Offenders may appeal all Level II responses except emergency grievances to Level III at DOC Headquarters in Olympia, where they are re-investigated.  *Id*.  DOC administrators are the respondents at Level III.  *Id*.

C.      **Plaintiff's Grievance History**

Mr. Leshowitz filed an initial grievance related to a September 22, 2015 incident where he complained that Officer Bisson put the cuffs on his arms too tightly and Officer Bisson decided to return him to his cell after Mr. Leshowitz told Officer Bisson to "shut up asshole."

REPORT AND RECOMMENDATION - 3

1  Mr. Leshowitz does not claim in this grievance that Officer Bison slammed his head into a
2  concrete wall.  *See* Dkt. 30, Caldwell Dec., Attachment D, Initial Grievance Log ID No.
3  15595752.  Mr. Leshowitz was interviewed as part of the grievance investigation and received a
4  response to his initial grievance.  *Id.*, Caldwell Dec., Attachment E.

5  Mr. Leshowitz did not appeal this grievance beyond Level I of the Offender Grievance
6  Program.  *Id.*, Caldwell Dec. at ¶¶ 11-12.  Mr. Leshowitz did not appeal any grievance related to
7  Officer Bisson to Level III of the OGP.  Dkt. 30, Caldwell Dec. at ¶12.  Throughout his
8  incarceration, Mr. Leshowitz has appealed one staff misconduct grievance to Level III, but the
9  grievance is unrelated to Defendant Bisson.  *Id.*, Caldwell Dec. at ¶13.

10  **STANDARD OF REVIEW**

11  The Court shall grant summary judgment if the movant shows that there is no genuine
12  dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.
13  Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence
14  of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d
15  1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce
16  any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the
17  absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato*
18  *Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

19  A nonmoving party's failure to comply with local rules in opposing a motion for
20  summary judgment does not relieve the moving party of its affirmative duty to demonstrate
21  entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th
22  Cir. 2003).  "If the moving party shows the absence of a genuine issue of material fact, the non-
23  moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

## DISCUSSION

The Prison Litigation Reform Act of 1995 ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Inmates must not only fully exhaust available administrative remedies, but they also must exhaust those remedies in a timely manner and must abide by the administrative rules governing the internal grievance process. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To effectively exhaust his administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). Because the purpose of exhaustion is to give prison administrators a chance to resolve the issues, the inmate must exhaust each of his claims through grievances containing enough factual specificity to notify officials of the alleged harm. *Id*. at 1120.

1   Mr. Leshowitz failed to properly exhaust the administrative remedies available to him
2   and this deficiency requires dismissal of his excessive force claim against Officer Bisson.  Mr.
3   Leshowitz has never grieved an incident where Defendant Bisson allegedly slammed his head
4   into a cement wall.  Dkt. 30, Caldwell Dec. at ¶11.  And although Mr. Leshowitz filed an initial
5   grievance regarding Officer Bisson placing the cuffs on his arms too tightly, Mr. Leshowitz did
6   not appeal this grievance beyond Level I of the four levels available in the OGP.  *Id.*, Caldwell
7   Dec at ¶¶ 8, 11-12.  Although Mr. Leshowitz claims that he did not know that he could or should
8   file a grievance, this claim is belied by the fact that he in fact filed an initial grievance against
9   Officer Bisson and on another occasion (unrelated to the incidents at issue here), filed a
10  grievance and appealed it through the full grievance appeal process.  *Id.*, Caldwell Dec. at ¶13.
11  Because Mr. Leshowitz did not exhaust his administrative remedies, his claim is
12  premature and must be dismissed without prejudice.  *See*, *Wyatt v. Terhune*, 315 F.3d 1108, 1120
13  (9th Cir.2003), *overruled on other grounds in Albino v. Baca,* 747 F.3d 1162 (9thCir. 2014) ("If
14  a prisoner has failed to exhaust his administrative remedies, the appropriate remedy is dismissal
15  without prejudice.")

## CONCLUSION

17  The Court recommends that Defendant Bisson's motion for summary judgment (Dkt. 29)
18  be **GRANTED** and that Plaintiff Leshowitz's claims against Defendant Bisson be **dismissed**
19  **without prejudice**.
20  Any objections to this Recommendation must be filed and served upon all parties no later
21  than **Wednesday, February 7, 2018**.  The Clerk should note the matter for **Friday, February 9,**
22  **2018**, as ready for the District Judge's consideration if no objection is filed.  If objections are
23  filed, any response is due within 14 days after being served with the objections.  A party filing an

REPORT AND RECOMMENDATION - 6

objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve (12) pages. The failure to timely object may affect the right to appeal.

DATED this 17th day of January, 2018.

                                                                     /s/ Brian A. Tsuchida
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7